UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DENIECE FELLOWS,

          Plaintiff,

vs.                             Case No. 2:05-cv-561-FtM-29SPC

E AND J ENTERPRISES OF COLLIER
COUNTY, INC., a Florida corporation,
f/k/a TOP NOTCH PEST CONTROL, INC.,
and ARROW EXTERMINATORS, INC., a
foreign corporation,

          Defendants.
_____

**OPINION AND ORDER**

     This matter comes before the Court on plaintiff's Motion for Remand (Doc. #15), filed on December 23, 2005. Defendant Arrow Exterminators, Inc. filed a Response in Opposition (Doc. #18) on January 17, 2006. Defendant E and J Enterprises of Collier County, Inc. has not yet been served.

**I.**

     The Complaint (Doc. #2) was originally filed in state court on October 17, 2005, and removed to the district court on November 25, 2005. Plaintiff alleges that she is a resident of Collier County and that the matter in controversy exceeds $15,000.00. Plaintiff further states that defendant E and J Enterprises of Collier County, Inc. (E&J) was known as Top Notch Pest Control, Inc. and maintains a principal address in Naples, Florida. Defendant Arrow Exterminators, Inc. (Arrow) is alleged to have its principal place

of business in Atlanta, Georgia, and to own Top Notch Pest Control, Incorporated (Top Notch) (Doc. #2, ¶¶ 2-3, 5, 7-8). Plaintiff states that at all times relevant she was employed by defendants, and was last employed by Top Notch in Naples, Florida. (Id. at ¶ 4, 6).

Plaintiff alleges that she was hired by defendants in December 2000, left the company in July 2001. In May 2002, plaintiff's daughter was born with Pelizaeus-Merzbacher disease, a rare and degenerative central nervous system disorder. Plaintiff returned to the company in August 2002. (Id. at ¶ 12). In September 2003, plaintiff's daughter began vomiting blood and was airlifted to Lee Memorial Hospital. (Id. at ¶ 15). In October 2003, plaintiff's daughter contracted a respiratory syncytial virus (RSV), a rare form of pneumonia. (Id. at ¶ 17). After consultation with "company executives," plaintiff was permitted to bring her daughter to work for monitoring. After 30 days, plaintiff attempted to return her daughter to a daycare program, however, after 4 days, plaintiff's daughter developed another respiratory infection. Plaintiff removed her daughter from daycare and with "Defendants' consent" brought her back to work from November 2003 until September 2004. (Id. at ¶¶ 19-20). In September 2004, plaintiff was advised to place her daughter in a Prescribed Pediatric Extended Care (PPEC) program, which she did on September 28, 2004.

On October 5, 2004, plaintiff was terminated from her position as office manager. (Id. at ¶¶ 13, 22-24). At that time, plaintiff was advised by "Defendants' Manager" and "Defendants' Regional Manager" that her place was at home caring for her daughter. (Id. at ¶¶ 25-26). Plaintiff was also told that the company was downsizing, however, another less qualified individual hired after plaintiff was not terminated and other employees were hired to take over plaintiff's responsibilities. (Id. at ¶¶ 27-28). Plaintiff alleges gender and disability discrimination under the Florida Civil Rights Act of 1992.

Defendant Arrow removed the case from state court alleging diversity jurisdiction because E&J was fraudulently joined. Defendant Arrow argues that plaintiff was not an employee of E&J and was not terminated by E&J, but rather Arrow was the employer and took the adverse employment action. (Doc. #1, ¶¶ 13-14). Defendant Arrow further argues that the amount in controversy exceeds $75,000, exclusive of interest and costs, based on a demand letter and the extensive damages requested.

**II.**

Removal jurisdiction exists only where the district court would have had original jurisdiction over the action. 28 U.S.C. § 1441(a); Darden v. Ford Consumer Fin. Co., Inc., 200 F.3d 753, 755 (11th Cir. 2000). A district court has subject matter jurisdiction over diversity cases pursuant to 28 U.S.C. § 1332. Section 1332(a) requires that the parties be citizens of different states and that

the matter in controversy exceed the sum or value of $75,000, exclusive of interest and costs. <u>Morrison v. Allstate Indem. Co.</u>, 228 F.3d 1255, 1261 (11th Cir. 2000).

Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity for removal. <u>Triggs v. John Crumpa Toyota, Inc.</u>, 154 F.3d 1284, 1287 (11th Cir. 1998). An action may be removed despite the presence of a non-diverse party if the joinder of the non-diverse party was fraudulent, and the Eleventh Circuit has identified three situations where joinder has been deemed fraudulent. <u>Id.</u> Addressing the situation at issue here, the Eleventh Circuit summarized its standard as follows:

> Even if a named defendant is such a [non-diverse] citizen, however, it is appropriate for a federal court to dismiss such a defendant and retain diversity jurisdiction if the complaint shows there is no possibility that the plaintiff can establish any cause of action against that defendant. If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder was proper and remand the case to the state court. The plaintiff need not have a wining case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.

<u>Tillman v. R.J. Reynolds Tobacco</u>, 253 F.3d 1302, 1305 (11th Cir. 2001)(citations and quotations omitted). After the Alabama Supreme Court answered a certified question, the Eleventh Circuit re-iterated that "if there is a possibility that a state court would find that the complaint states a cause of action against any of the

resident defendants, the federal court must find that the joinder was proper and remand the case to the state court." Tillman v. R.J. Reynolds Tobacco, 340 F.3d 1277, 1279 (11th Cir. 2003).

The determination of fraudulent joinder is made on the basis of plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir. 1989); Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005)(citing Pacheco de Perez v. AT&T Co., 139 F.3d 12368, 1380 (11th Cir. 1998)). "[A]fter drawing all reasonable inferences from the record in the plaintiff's favor and then resolving all contested issues of fact in favor of the plaintiff, there need only be a reasonable basis for predicting that the state law *might* impose liability on the facts involved." Crowe v. Coleman, 113 F.3d 1536, 1541-42 (11th Cir. 1997)(citation and internal quotation omitted)(emphasis in original).

### III.

Plaintiff's allegations of discrimination are based on her termination date of October 5, 2004. Therefore, the relevant time period for jurisdictional purposes is on or about October 5, 2004. Three issues are presented: (1) Whether defendant E&J was fraudulently joined; (2) Whether a demand/settlement letter may be used to meet the requisite amount in controversy; and (3) If so, whether defendant satisfied the jurisdictional amount in this case.

**A.**

Defendant argues that E&J "had no involvement in the termination of Plaintiff, and was not Plaintiff's employer on October 5, 2004, [therefore] there is no reasonable possibility that it could be liable under the FCRA for the adverse-employment action complained of in the Complaint."  (Doc. #1, ¶ 15).  More specifically, by Declaration of Nancy Reynolds, the Manager of Human Resources for Arrow, defendant states:  Arrow purchased all of the assets of Top Notch on January 16, 2003, including the rights to the name "Top Notch Pest Control, Inc."; plaintiff was an employee of Arrow at the time of her termination; plaintiff's paychecks were issued by Arrow Exterminators, Inc.; Arrow has no connection with E&J and had no connection at the time of termination; and the adverse decision was made by employees of Arrow.  (Doc. #1, Ex. B).

Plaintiff counters that E&J was formerly Top Notch Pest Control, Inc.[1], that she worked at the Naples, Florida location of Top Notch, and that the principals of E&J were active in the daily operations of Top Notch.  Plaintiff states: "Whether or not there is any connection between Arrow and E and J, particularly whether or not E and J engaged in any discriminatory treatment of Plaintiff, simply has not been determined."  (Doc. #15, p. 4).  The

---

[1] The Florida Department of State, Division of Corporations, database reflects a January 23, 2004, name change from Top Notch Pest Control, Inc. to E and J Enterprises of Collier County, Inc. (Doc. #15, Ex. A).

Court doubts that a party is properly sued simply because plaintiff cannot determine a basis not to sue, but this is an issue for another day. Plaintiff has presented no facts which would justify a belief that E&J had anything to do with her employment or termination after the business was sold to Arrow on January 16, 2003. The fact that E&J's principals continued to work in the business after it was sold to another does not suggest that the selling corporation continued to have anything to do with the business. The Court finds that plaintiff has not and cannot state a claim for employment discrimination against E&J, and that E&J has been fraudulently joined for the purpose of defeating federal jurisdiction. If the jurisdictional amount is satisfied, the Court will dismiss E&J as a party.

**B.**

The Complaint only alleges that damages exceed the state circuit court jurisdictional minimum of $15,000, the amount otherwise being nonspecific. In this circumstance, the removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the $75,000 jurisdictional requirement. Leonard v. Enterprise Rent A Car, 279 F.3d 967, 972 (11th Cir. 2002); Williams v. Best Buy Co., Inc., 269 F.3d 1316, 1319 (11th Cir. 2001), aff'd after remand, 31 Fed. Appx. 938 (11th Cir. 2002)(Table); Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1281 n. 5 (11th Cir. 2001); Tapscott v. MS Dealer Svc. Corp., 77 F.3d 1353, 1357 (11th Cir. 1996), overruled on other

grounds, Cohen v. Office Depot, Inc., 204 F.3d 1069, 1072 (11th Cir. 2000), cert. denied, 531 U.S. 957 (2000). Thus, the issue is whether defendant has shown that it is more likely than not that the amount in controversy exceeded $75,000, exclusive of interest and costs.

Defendant argues that the November 15, 2005, letter from plaintiff's counsel proffering a settlement demand of $500,000 plus $150,000 in attorney fees establishes the jurisdictional amount. (Doc. #1, Ex. C). Plaintiff responds that the letter was solicited by defendant in a November 9, 2005, letter seeking to initiate settlement negotiations and that the amounts "by their very nature involve posturing on the part of litigants." (Doc. #15, p. 6). The Court finds that this letter can be considered as to the jurisdictional amount issue. Additionally, the Court readily concludes that the November 15, 2005 letter involves at least a certain degree of posturing; for example, it seems unlikely that a matter which is in an "early stage" would generate a reasonable attorney fee of $150,000. The letter, however, states that plaintiff was out of work with no income for five months, the job she found paid $12,000 a year less than she had been making and did not provide benefits, and that the termination "has impacted her life in ways that are unimaginable to most people" and was "**extremely** distressful, particularly in the context of my client fearing that she would be unable to support her critically ill daughter." (Doc. #1-2, Exhibit C (emphasis in original)). The

-8-

Court concludes that even when the letter is discounted for normal puffery, defendant has satisfied its burden as to the jurisdictional amount.

Accordingly, it is now

**ORDERED**:

1. Plaintiff's Motion for Remand (Doc. #15) is **DENIED.**

2. Defendant E and J Enterprises of Collier County, Inc., a Florida Corporation, F/k/a Top Notch Pest Control, Inc. is **dismissed** without prejudice.  The Clerk shall amend the case heading to reflect the dismissal.

3. Plaintiff's request for attorney's fees is **denied**.

**DONE AND ORDERED** at Fort Myers, Florida, this ___9th___ day of February, 2006.

*[signature: John E. Steele]*

JOHN E. STEELE
United States District Judge


Copies:
Counsel of record